UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LISA WHITE as Surviving Natural Parent and Next of Kin of AARON BEVER, Deceased, | ) ) ) ) | |
| v. | ) ) | No. 2:14-CV-172 Phillips/Inman |
| WASHINGTON COUNTY, TENNESSEE, *et al.*, | ) ) ) | |

## MEMORANDUM OPINION

This civil action is before the Court on two pending motions: the motion for partial dismissal filed by defendants Washington County, Tennessee ("Washington County") and Sheriff Ed Graybeal, Jr. (collectively the "Washington County defendants") [Doc. 7]; and the motion to dismiss filed by defendant Southern Health Partners, Inc. ("SHP") [Doc. 9]. The plaintiff responded in opposition to the first motion [Doc. 13], but she has not responded or otherwise answered the second motion and the time for doing so has long passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2.

The Court has carefully considered the motions, supporting memoranda [Docs. 8, 10], plaintiff's response, and the authorities cited therein. For the reasons set forth herein, defendants Washington County and Graybeal's motion to dismiss [Doc. 7] will be **DENIED in part** and **GRANTED in part** and defendant SHP's motion to dismiss [Doc. 9] will be **GRANTED**.

## I. Relevant Facts[1]

Plaintiff's decedent Aaron Bever committed suicide while incarcerated in the Washington County jail. On June 7, 2013, following an incident where he was barricaded in a hotel room with a gun to his head, Mr. Bever was transported by the Washington County Sheriff's Office to the Johnson City Medical Center Emergency Department for a mental health evaluation [Doc. 1 at ¶ 10]. The next day, Mr. Bever was transported by Washington County officers to Woodridge Hospital where he was admitted for seven days for both physical and psychological problems, including suicidal ideation [*Id.* at ¶¶ 11—12]. After he was discharged on June 14, 2013, Mr. Bever was transported to the Washington County jail and was examined by unnamed health professionals before being placed in his cell [*Id.* at ¶¶ 13—14]. On June 16, 2013, Mr. Bever was found hanging in his jail cell [*Id.* at ¶ 17]. Mr. Bever was resuscitated and taken to the Johnson City Medical Center Emergency Department where he died on June 17, 2013 [*Id.* at ¶ 18].

Plaintiff Lisa White is the surviving natural parent of Mr. Bever and alleges that the Washington County defendants were aware of Mr. Bever's psychological issues, including a previous suicide threat, and yet the defendants failed to provide sufficient safeguards to prevent his suicide [*Id.* at ¶¶ 2, 15—16]. Defendant SHP is alleged to be a private for-profit entity which was contracted to provide medical and psychological care

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

to the inmates at the Washington County jail [*Id.* at ¶ 6].  Plaintiff has asserted federal constitutional claims and state claims of negligence against all of the defendants [*Id.* at ¶¶ 19—52].

## II.  Standard of Review

The Washington County defendants' motion is filed under Fed. R. Civ. P. 12(b)(1), asserting a lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), asserting that the official capacity claims against Sheriff Graybeal are redundant of the claims against Washington County.  "[A] district court must generally confine its Rule 12(b)(1) or 12(b)(6) ruling to matters contained within the pleadings and accept all well-pleaded allegations as true."  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009).

## III.  Washington County's Motion to Dismiss

Washington County and Sheriff Graybeal present two arguments in their motion to dismiss:  first, that the Court should decline to exercise supplemental jurisdiction over the state claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, *et seq.*, because that statute reserves exclusive jurisdiction in the Tennessee Circuit Courts; and second, that the official capacity claims against Sheriff Graybeal should be dismissed as redundant to the claims against Washington County. The Court will address each argument in turn.

### A.  TGTLA Claims

The TGTLA waives the absolute immunity from suit enjoyed by state governmental entities in certain circumstances. *See* Tenn. Code Ann. § 29-20-201, *et seq*. Where that immunity is removed, any claim "must be brought in strict compliance" with the statute. Tenn. Code Ann. § 29-20-201(c). At issue here is the statutory provision that state "circuit courts shall have exclusive original jurisdiction" over any TGTLA claim. Tenn. Code Ann. § 29-20-307. The Washington County defendants argue that the Court should decline to exercise its supplemental jurisdiction over the TGTLA claims because the exclusive jurisdiction provision of Tenn. Code Ann. § 29-20-307 constitutes an "exceptional circumstance" where federal courts may decline supplemental jurisdiction.

It is undisputed that the Court has original subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 based on the federal constitutional claims. The Court's jurisdiction over the state law claims is based on the supplemental authority granted by 28 U.S.C. § 1367(a) to hear "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("[t]he state and federal claims must derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding"). The Court's exercise of supplemental jurisdiction is, as defendants point out, discretionary and the Court may decline to exercise such jurisdiction even if otherwise proper "in exceptional circumstances [where] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

4

The defendants' argument rests on the holding in *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), in which the Sixth Circuit concluded that the exclusive jurisdiction provision of the TGTLA demonstrates the legislature's "unequivocal preference" for TGTLA claims to be handled by state courts and is an exceptional circumstance for declining jurisdiction. The defendants also rely on decisions from this district which have followed the Sixth Circuit's decision in *Gregory* by declining to exercise supplemental over TGTLA claims. *See Cass v. Tenn. Valley Auth.*, No. 3:10-CV-307 (E.D. Tenn. Aug. 10, 2012) (Varlan, J.); *Calhoun v. Carter Cnty., Tenn.*, No. 2:12-CV-398 (E.D. Tenn. June 6, 2013) (Greer, J.); *Peppers v. Washington Cnty., Tenn.*, No. 2:13-CV-180 (E.D. Tenn. Mar. 26, 2014) (Greer, J.).

The plaintiff argues that *Gregory* is distinguishable because it addressed the dismissal of an official capacity claim against a county officer rather than a TGTLA claim against a county defendant [Doc. 13 at p. 3]. Plaintiff also distinguishes the decision in *Cass* because all of the claims against Grainger County arose under the TGTLA, whereas this case includes both federal and state claims against all defendants [*Id.* at pp. 3—4]. Citing Judge Greer's acknowledgement in *Calhoun* that district courts in Tennessee and within this district are split over whether the TGTLA *requires* a federal court to decline to exercise supplemental jurisdiction, plaintiff points to this Court's decision in *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 850—51 (E.D. Tenn. 2011).

5

In *Dillingham*, the undersigned noted this split of authority. The Court also noted that the grant of original jurisdiction over TGTLA claims to state circuit courts does not defeat federal jurisdiction. *Id.* at 851. The Court relied on the rationale in *Brown v. City of Memphis*, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006), which stated:

> Supplemental jurisdiction is grounded, implicitly, in Article III of the Constitution, and, explicitly, in federal statutory law. …State legislatures are powerless to impose jurisdictional constraints upon the federal judiciary. Whatever the intent of the Tennessee legislature may have been in enacting the Governmental Tort Liability Act, the authority of the federal courts to appropriately exercise jurisdiction over supplemental state law matters remains undiminished. To rule otherwise would be to imply that a state could nullify two centuries of case law and an entire federal statute on the subject of supplemental jurisdiction by merely expressing a preference that all state law controversies be kept "in-house."

*Id*. This Court also noted the *Brown* Court's rationale that dismissal of the state law claims would "necessitate duplicative litigation which would be wasteful of judicial and litigant resources." *Dillingham*, 809 F. Supp. 2d at 851 (quoting *Brown*, 440 F. Supp. 2d at 878); *see also Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 779 (W.D. Tenn. 2010) (separate state and federal proceedings would "waste the resources of the parties and the state and federal courts").

The undersigned continues to find the rationale outlined in *Brown* persuasive, particularly given the early stage of this case. If the TGTLA claims were dismissed, the plaintiff would be required to pursue those claims in a separate state court action while also pursuing her federal claims, which arise from the same set of operative facts, in this Court. Such a result would be duplicative and a waste of judicial and the parties' resources. Accordingly, the Court declines to exercise its discretion to dismiss the

plaintiff's TGTLA claims at this time and the motion to dismiss will be **DENIED in part.**

B.  Sheriff Graybeal Official Capacity Claims

Defendant Eddie Graybeal, Jr. is the Sheriff of Washington County and is sued in his official and individual capacities [Doc. 1 at ¶ 4]. Sheriff Graybeal argues that the official capacity claims against him should be dismissed as redundant because Washington County is also named as a defendant. Sheriff Graybeal relies on the well-settled authority that an official capacity suit is treated as a suit against the entity, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), and that official capacity claims should be dismissed where the same claims are also brought against the governmental entity. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) ("the district court properly granted summary judgment to the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant").

Plaintiff argues that it is premature to dismiss the official capacity claims because Sheriff Graybeal cannot be liable in his individual capacity for breaching a duty he only owed in his official capacity [Doc. 13 at p. 5]. Whether or not plaintiff can sustain a claim against Sheriff Graybeal in his individual capacity is not presented by this motion. Rather, the Court is asked whether the claims against Sheriff Graybeal in his official capacity are duplicative of the claims against Washington County. A review of the complaint reveals that the claims are indeed identical; there are no claims against Sheriff Graybeal which are not also asserted against Washington County. Accordingly, the

7

Court finds that the claims against Sheriff Graybeal in his official capacity are redundant of the claims against Washington County and the motion to dismiss will be **GRANTED in part**.

IV. <u>**SHP's Motion to Dismiss**</u>

SHP has moved to dismiss the state law claims against it on the grounds that these claims are essentially health care liability claims and plaintiff has failed to comply with the requirements of Tenn. Code Ann. §§ 29-26-122 and 29-26-121 [Doc. 9]. As noted above, plaintiff has not responded to this motion.

Tennessee law defines a "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). Further, "health care services" are defined to include "care by health care providers, which includes care by physicians, nurses, licensed practical nurses, … certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care … and similar patient services." Tenn. Code Ann. § 29-26-101(b). Notably, the statute also provides that "[a]ny such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Tenn. Code Ann. § 29-26-101(c).

8

The complaint alleges that SHP and its employees "were contractually responsible for rendering and attending to the health needs of Mr. Bever" and that they "demonstrated deliberate indifference to the serious medical needs" of Mr. Bever during his incarceration [Doc. 1 at ¶ 1]. The state law claims allege that SHP was negligent and failed "to take necessary precautions to prevent the injuries suffered" by Mr. Bever, that SHP had a "duty to exercise reasonable care in handling the care and treatment" of Mr. Bever and SHP employees and agents "were negligent in handling the care and treatment of Bever," that SHP employees or agents "failed to take into consideration the health, welfare, and safety of Bever" and failed "to provide adequate care and treatment of decedent" which resulted in his death [Doc. 1 at ¶¶ 41, 43, 45—46]. Thus, the Court can easily conclude that plaintiff has alleged claims concerning the provision of or failure to provide health care services to Mr. Bever and that those are "health care liability claims" covered by Tenn. Code Ann. § 29-26-101, *et seq.*, regardless of the labels applied to those claims.

The statute requires that "[i]n any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Tenn. Code Ann. § 29-26-122(a). The certificate of good faith must state that the plaintiff or plaintiff's counsel has consulted with a competent expert who believes, based on the available medical records, that there is a good faith basis to maintain the action. Tenn. Code Ann. § 29-26-122(a)(1) & (2). The failure to provide a certificate of good faith "shall, upon motion, make the action subject to dismissal with prejudice." Tenn. Code Ann. § 29-26-122(c). In the absence of

9

any proof or argument to the contrary, the Court concludes that plaintiff's claims of SHP's failure to assess or provide adequate care for Mr. Bever's mental health issues are not within the knowledge of ordinary laymen and would require expert testimony. *See Mitchell v. Tennova Healthcare*, No. 3:13-CV-364, 2014 WL 1154233, at *6 (E.D. Tenn. Mar. 21, 2014); *Miller v. Monroe Cnty., Tenn.*, No. 3:09-CV-85, 2010 WL 1427298, at *4 (E.D. Tenn. April 7, 2010). It is undisputed that plaintiff did not file a certificate of good faith with her complaint or provide any explanation for her failure to do so.

Further, the statute requires that a person "asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based on health care liability." Tenn. Code Ann. § 29-26-121(a)(1). A complaint for health care liability must state whether the party has complied with the 60-day notice provision and must provide documentation of the notice. Tenn. Code Ann. § 29-26-121(b). It is undisputed that the complaint contains no allegations concerning the 60-day notice requirement and plaintiff has supplied no information to suggest that such notice was given, nor provided an "extraordinary cause" to excuse the failure to provide such notice. *Id.*

The Tennessee Supreme Court has unequivocally stated that the use of the term "shall" in both the certificate of good faith requirement and the pre-suit notice requirement "indicates that the legislature intended the requirements to be mandatory, not directory." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). "We hold that the statutory requirements that a plaintiff give sixty days pre-suit notice and file a

10

certificate of good faith with the complaint are mandatory requirements and not subject to substantial compliance." *Id*. at 304. Thus, the plaintiff's failure to satisfy these statutory requirements mandates a dismissal with prejudice. *See id.* Accordingly, SHP's motion to dismiss will be **GRANTED**.

V. <u>Conclusion</u>

For the reasons set forth above, the motion to dismiss filed by Washington County and Sheriff Graybeal [Doc. 7] will be **DENIED in part** as the Court declines to dismiss the TGTLA claims on jurisdictional grounds and **GRANTED in part** whereby the official capacity claims against Sheriff Graybeal will be dismissed. SHP's motion to dismiss [Doc. 9] will be **GRANTED** and the state law claims against SHP will be dismissed with prejudice. An appropriate order will be entered.

        s/ Thomas W. Phillips
        SENIOR UNITED STATES DISTRICT JUDGE

11

Case 2:14-cv-00172-MCLC   Document 15   Filed 01/12/15   Page 11 of 11   PageID #: 110